UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT C. COLLAS, II,

       Plaintiff,

v.                                 CASE NO. 8:20-cv-1791-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

       Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an

administrative decision denying his applications for a period of disability,

disability insurance benefits ("DIB"), and supplemental security income

("SSI"), filed December 11, 2013.[2]  Following an October 25, 2019 remand

from the Appeals Council pursuant to a May 29, 2018 remand order[3] by the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 22.)

[2] In order to be entitled to a period of disability and DIB, Plaintiff had to establish disability on or before June 30, 2013, his date last insured.  (Tr. 20, 66, 640.)  The earliest time that SSI benefits are payable is the month following the month in which the application is filed.  (*See* Tr. 767 (citing 20 C.F.R. § 416.335).)

[3] Pursuant to the remand order, the Administrative Law Judge ("ALJ") was directed to offer Plaintiff an opportunity for a new hearing because the ALJ's hypothetical question to the Vocational Expert ("VE") in the earlier decision did not take into account Plaintiff's moderate social functioning difficulties.  (Tr. 639, 693-708, 712.)

United States District Court for the Middle District of Florida and a new administrative hearing held on March 4, 2020,[4] ALJ Slahta issued a decision on April 14, 2020, finding Plaintiff not disabled from November 1, 2012, the alleged disability onset date, through March 24, 2017, the day before his disability commenced.  (Tr. 232, 639-51, 660-92, 712.)

In reaching the April 14, 2020 decision, ALJ Slahta found that during the relevant period, Plaintiff had the following severe impairments: multi-level lumbar degenerative disc disease; spondylolisthesis; high blood pressure; obesity; and a mental impairment variously diagnosed to include bipolar disorder and anti-social personality disorder.  (Tr. 642.)  ALJ Slahta also found that Plaintiff had the residual functional capacity ("RFC") to

---

[4] Plaintiff had a total of four hearings before various ALJs:

- The first hearing was held on August 6, 2012 before ALJ Glen H. Watkins, resulting in an unfavorable decision on October 31, 2012, and a denial of Plaintiff's request for review by the Appeals Council on November 12, 2013 (Tr. 66, 80, 663);
- The second hearing was held on November 9, 2015 before ALJ Steven D. Slahta, resulting in an unfavorable decision on January 26, 2016, and a denial of Plaintiff's request for review by the Appeals Council on March 24, 2017 (Tr. 1, 20, 38, 663);
- The third hearing was held on July 11, 2019 before ALJ Ramon Suris-Fernandez, resulting in a favorable decision on July 31, 2019, which found Plaintiff disabled since March 25, 2017 on his new claim for SSI benefits, filed April 27, 2017 (Tr. 639, 663, 712, 762-67); and
- The fourth hearing was held on March 4, 2020 before ALJ Slahta, resulting in an unfavorable decision on April 14, 2020, which is presently before the Court.  (Tr. 639-51, 660-92.)  Although there is no record of any Appeals Council action following the ALJ's April 14, 2020 decision, the Commissioner does not dispute that Plaintiff has exhausted his administrative remedies and that the case is properly before this Court pursuant to 42 U.S.C. § 405(g). (*See* Doc. 25 at 2.)

perform a reduced range of sedentary work.  (Tr. 644.)  Then, after finding that Plaintiff was unable to perform any past relevant work, the ALJ concluded, based on Plaintiff's age, education, work experience, RFC, and the VE's testimony,[5] that "there were jobs that existed in significant numbers in the national economy" that Plaintiff could have performed from November 1, 2012 through March 24, 2017.[6]  (Tr. 649-50.)  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is due to be **AFFIRMED**.

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support

---

[5] The ALJ found that the VE's testimony was consistent with the information in the Dictionary of Occupational Titles ("DOT") pursuant to Social Security Ruling ("SSR") 00-4p.  (Tr. 650.)

[6] Specifically, the VE testified that a hypothetical person with Plaintiff's age, education, work experience, and RFC, could perform the representative occupation of "final assembler" (DOT number 713.687-018), which has approximately 25,000 jobs in the national economy.  (Tr. 650, 686; *but see* Tr. 58 (estimating the number of jobs to be 235,000 in the national economy).)

3

a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.     Discussion

### A.     The Parties' Positions

Plaintiff argues that the ALJ erred in failing to reconcile an apparent conflict between the VE's testimony that there were approximately 25,000 "final assembler" jobs and the United States Department of Labor ("DOL") Bureau of Labor Statistics ("BLS") "Occupational Employment and Wage Statistics" report from May 2020 that there were 26,140 jobs in the entire

Ophthalmic Laboratory Technicians category,[7] in which the "final assembler" job is a subset.  (Doc. 23 at 6-7, 9 (citing, *inter alia*, SSR 00-4p and *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018)).)  Plaintiff explains:

> In this matter, there is no showing, nor substantial evidence in the record, that the "approximately 25,000" jobs [figure] is accurate.  In fact, there is governmental data which calls into question the numbers [that the VE] presented.  There was an apparent inconsistency which should have been reconciled before a decision was issued.
> . . .
> The numerical breakdown and percentages of the[] various positions within the broader category of Ophthalmic Laboratory Technicians is unknown.  It is also unknown whether each and every subset has the same limitations in [RFC] as imposed in the hypothetical question to the [VE] and utilized in the decision (thus, any argument regarding "harmless error" must fail).
>
> It is unknown how the [VE] arrived at the "approximately 25,000" figure for Final Assemblers alone.  But if, *arguendo*, that number is accurate, it seems that, per the BLS, there are only about 1,140 slots for all the other jobs combined.  There is substantial evidence that the [VE's] posited numbers are incorrect, but no supportive evidence as to their accuracy.

(*Id.* at 7-8 (emphasis in original).)

Defendant responds that the well-qualified VE's unchallenged testimony constitutes substantial evidence to support the ALJ's step-five finding.  (Doc. 25 at 5.)  Defendant points out that the relevant inquiry before

---

[7] This category includes "precision lens polishers or grinders, centerer-edgers, and lens mounters."  (Doc. 23 at 7; Doc. 23-2 at 1.)

the Court is whether the VE's testimony constitutes substantial evidence

supporting the ALJ's decision, not whether substantial evidence supports the

VE's testimony.  (*Id.* at 8.)  Defendant argues that Plaintiff's counsel's lay

interpretation of the data in the "Occupational Employment and Wage

Statistics" is not relevant to the issue before the Court and, in any event,

counsel's "speculative assertions fail to undermine the well-qualified VE's

testimony or the ALJ's step-five finding."  (*Id.* at 10.)  Defendant explains:

> While Plaintiff discusses data from the "Occupational
> Employment and Wage Statistics," the VE did not mention such
> data at all in [her] testimony (Tr. 686-87).  [She] did not testify
> the identified job numbers were not specific to each occupation
> (Tr. 686.  Plaintiff, through his attorney at the hearing, did not
> object to the VE's qualifications, did not ask the VE for
> supporting data related to job numbers, and did not present
> evidence contradicting the job numbers, including any data from
> the "Occupational Employment and Wage Statistics" or case law
> (Tr. 686-90).

(*Id.* at 11.)  Further, Defendant states that "the Social Security Act and its

regulations 'do not mandate a precise count of job numbers.'"  (*Id.* at 13 n.5

(citing *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1284 (11th Cir. 2020)).[8])

---

[8] Defendant points out, however, that *Goode* is factually distinguishable from
the present case, because:

> Here, the VE gave no indication that he calculated job numbers using
> data for SOC [Standard Occupational Classification] groups, or any
> OES [Occupations Employment Statistics] data; did not provide the
> wrong SOC code related to a DOT occupation, since he did not discuss
> SOC codes at all, and did not provide any incorrect DOT code (Tr. 685-
> 86).  The VE clearly cited the representative occupation (Tr. 686).
> Finally, Plaintiff, through his attorney, did not question the VE's
> methodology for calculating the numbers or challenge the reliability of

Also, Defendant argues that this Court should not consider any data that Plaintiff references because the data from the "Occupational Employment and Wage Statistics" was not presented at the hearing, is not part of the administrative record, and Plaintiff did not object to the VE's testimony. (Doc. 25 at 14.)

### B.   Analysis

At step five of the sequential evaluation process,[9] the ALJ must

---

the VE's testimony during the hearing—he first challenged the testimony in district court (Tr. 686-90). . . .

Notably, *Goode* did not hold a VE is *required* to explain the methodology used to calculate job numbers and that the VE's testimony could not constitute substantial evidence if the VE provides no explanation. Such a categorical rule would conflict with the Supreme Court's holding in *Biestek* [*v. Berryhill*, 139 S. Ct. 1148, 1155 (2019)].

(Doc. 25 at 15-16 (emphasis in original).)

The Court agrees with Defendant that *Goode* is indeed distinguishable from the present case. Notably, *Goode* was "not a case in which the claimant failed to challenge or question the vocational expert's methodology or job numbers," as "Ms. Goode's attorney repeatedly questioned the vocational expert regarding his flawed testimony, expressing multiple times to the ALJ that he did not find the testimony persuasive or credible and was trying to get 'specifics.'" 966 F.3d at 1284 n.3. Further, the VE's testimony in *Goode* "was significantly and fatally flawed" because the VE used the wrong SOC group code to determine whether there was a significant number of jobs in the national economy that the claimant could perform and because the VE's numbers from the wrong SOC group code substantially overstated the number of available jobs. *Id.* at 1281-82. Moreover, the VE's errors in *Goode* were not harmless, because: (1) the VE never provided the relevant job numbers from the correct SOC group; (2) those numbers were not in the record; and (3) those numbers were not provided by the Commissioner either in his brief or in another document that could have been judicially noticed on appeal. *Id.* at 1282.

[9] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

determine whether the claimant is capable of making a successful adjustment to other work (as opposed to his past relevant work) that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country." *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. §§ 404.1566(a), 416.966(a)); *see also* 20 C.F.R. §§ 404.1566(b), 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.").

In determining whether jobs exist in significant numbers either in the region where the claimant lives or in several regions of the country, the ALJ "will take administrative notice of reliable job information available from various governmental and other publications," such as the DOT, published by the DOL; County Business Patterns, published by the Bureau of the Census; Census Reports, also published by the Bureau of the Census; Occupational Analyses, prepared for the SSA by various State employment agencies; and the Occupational Outlook Handbook, published by the BOL Statistics. 20 C.F.R. §§ 404.1566(d), 416.966(d). The ALJ may also decide to use the services of a VE or other specialist. 20 C.F.R. §§ 404.1566(e), 416.966(e).

"The ALJ, relying on the VE's testimony, determines whether a specific number of jobs constitutes a significant number." *Webster*, 773 F. App'x at 555 (citing, *inter alia*, 20 C.F.R. §§ 404.1512(g), 416.912(g)); *see also Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005) (per curiam) ("The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number."). Thus, the question is not whether the VE's "testimony is supported by substantial evidence," but rather "whether the ALJ's decision is supported by substantial evidence." *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019) (per curiam) (emphasis omitted).

The Eleventh Circuit "has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015) (per curiam). "The appropriate focus under the regulation, however, is the national economy," not the local economy where the claimant resides. *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987).

Here, Plaintiff contends that the ALJ erroneously relied on the VE's testimony that there were approximately 25,000 "final assembler" jobs in the national economy, to support the ALJ's finding that there was a significant number of jobs in the national economy that Plaintiff could have performed

during the relevant period.  However, at the administrative hearing,

Plaintiff's attorney did not object to the VE's qualifications and did not

question the job numbers cited by the VE, the methodology used to arrive at

those numbers, and/or the consistency of the VE's testimony with the

information provided by any other source, including the "Occupational

Employment and Wage Statistics."[10]  (*See* Tr. 686.)  The Supreme Court has

recently stated that if a claimant does not demand the underlying evidence

supporting a VE's testimony, the VE's "testimony may count as substantial

evidence even when unaccompanied by supporting data."  *Biestek v. Berryhill*,

139 S. Ct. 1148, 1155 (2019); *see also Valdez v. Comm'r of Soc. Sec.*, 808 F.

App'x 1005, 1010 (11th Cir. 2020) (per curiam) (finding that the ALJ was

entitled to rely on the VE's testimony about the number of jobs available in

the national economy, because the claimant did not object to the VE's

testimony, did not question the VE's qualifications, and did not present the

occupational employment statistics to the ALJ, which also foreclosed the

Eleventh Circuit's consideration of the data in the occupational employment

statistics on appeal); *Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 402-03

(11th Cir. Sept. 12, 2012) (finding that "the ALJ was entitled to rely upon the

VE's testimony without requiring the VE to provide a comprehensive

---

[10] The Court will use Occupational Employment and Wage Statistics
("OEWS") and Occupations Employment Statistics ("OES") interchangeably.

statistical explanation of how he arrived at the reduced job number figures" where the "reduced estimate was based upon the VE's 'experience' and 'his personal knowledge of those jobs'"); *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 974-75 (11th Cir. 2012) (per curiam) (affirming the ALJ's reliance solely on the VE's testimony and noting that the claimant neither offered any evidence controverting the VE's testimony nor objected to it); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. 2011) (per curiam) (affirming the ALJ's reliance on the VE's testimony in part because at the hearing, the claimant "did not object to the VE's testimony or qualifications, offer any evidence controverting the VE's testimony, or even question the VE"); *Leija v. Colvin*, Case No.: 1:13-cv-1575GSA, 2015 WL 1439933, *5 (E.D. Cal. Mar. 26, 2015) (affirming the ALJ's decision and noting that "although Plaintiff was represented by counsel at his administrative hearing, counsel made no attempt to question the VE regarding her methodology or to challenge her testimony regarding the numbers of jobs available that Plaintiff could perform," and also stating that "no 'additional foundation' beyond a VE's 'recognized expertise' is required for the VE's testimony regarding the availability of jobs").[11]

---

[11] In 2018, the Ninth Circuit held that "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Shaibi v. Berryhill*, 883 F.3d 1102, 1109

Moreover, to the extent Plaintiff argues that the ALJ was required to independently verify the VE's testimony, in the Eleventh Circuit, "the ALJ is only required to do so when there is a conflict between the VE's testimony and the DOT." *Webster*, 773 F. App'x at 555 (citing *Washington*, 906 F.3d at 1365). Here, the alleged "conflict is between the number of available jobs the VE reported and the number of available jobs shown in the figures provided by the Bureau of Labor Statistics through its publication of [OES or OEWS]." *Id.* at 556. As explained in *Webster*:

> Unlike the situation in which the VE's testimony conflicts with the DOT, [the Eleventh Circuit] has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES [or OEWS]. Furthermore, the figures in the OES [or OEWS] are not part of the SSA's regulatory scheme.

*Id.* (citing 20 C.F.R. §§ 404.1566(d)(1) & (5), 416.966(d)(1) & (5)); *see also Therrell v. Berryhill*, No.: 1:15-cv-00782-LF, 2017 WL 1437316, *6 (D.N.M. Apr. 21, 2017) ("Job data in the OES naturally varies from the DOT, as the OES classifies jobs by census codes, known as [SOC] codes, rather than DOT codes."); *Leija*, 2015 WL 1439933 at *5 ("The SOC classification system is different from the DOT's classification system. As a result[,] the occupational classifications encompassed by the . . . OES program do not overlap with or

_____

(9th Cir. 2018).

correspond to the DOT's occupational classifications.  Thus, Plaintiff's challenge to the VE's testimony regarding the availability of jobs for each DOT category at issue is inherently problematic as it relies on statistics gleaned from a different classification system.  Furthermore, Plaintiff does not adequately demonstrate the relevancy of the specific OES data he relies on.").

As such, there is no requirement that an ALJ independently investigate and resolve conflicts between a VE's testimony and information provided by the OES/OEWS regarding job availability figures.  Notably, the OES/OEWS is not listed among the potential resources that could be used in determining the number of available jobs under 20 C.F.R. §§ 404.1566(d), 416.966(d).  *Cf. Therrell*, 2017 WL 1437316 at *7 (rejecting, for lack of "evidentiary support," the claimant's contention that the job numbers identified by the VE were "grossly inflated" where the claimant presented data from a program called "Job Browser Pro," which was "not among the examples listed in 20 C.F.R. § 404.1566(d) [and 20 C.F.R. § 416.966(d)] of data sources considered to provide reliable job information" and was not "sufficiently reliable to contradict the VE's testimony").

Furthermore, an ALJ is authorized to rely on the testimony of a VE in determining the number of available jobs, and there is no requirement that the VE produce all data considered in reaching his or her conclusions.  *See*

13

*Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) (per curiam) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony.").

Here, the VE testified that there were approximately 25,000 "final assembler" jobs in the national economy that a hypothetical person with Plaintiff's age, education, work experience, and RFC could perform.  (Tr. 686.) At the hearing, Plaintiff's counsel did not ask the VE for supporting data and did not present evidence from any source contradicting the job numbers cited by the VE.  Thus, based on the VE's uncontroverted testimony, the ALJ reasonably concluded that "there were jobs that existed in significant numbers in the national economy" that Plaintiff could have performed from November 1, 2012 through March 24, 2017.  (Tr. 649-50.)  Also, Plaintiff has provided no basis to show that the OEWS job numbers are reliable or that his counsel's speculations about the number of jobs should be accepted.  *See Davis v. Berryhill*, No. 17-CV-293-N, 2018 WL 2208432, *7 (S.D. Ala. May 11, 2018) (stating that "plaintiff's lay assessment of the raw vocational data derived from Job Browser Pro [SkillTran] does not undermine the reliability of the VE's opinion" and while the data presented by plaintiff included some information about the methodology used to determine the size of each Occupational Employment Survey group, it "was unaccompanied by any

14

analysis or explanation from a [VE] or other expert source to put the raw data into context"). In the absence of reliable evidence to the contrary, the VE's testimony supporting the ALJ's finding as to the number of jobs must stand. Thus, contrary to Plaintiff's argument, there was no apparent conflict that the ALJ was required to reconcile.

Further, the approximate number of available jobs cited by the VE satisfies the Commissioner's burden of identifying a significant number of jobs in the national economy. *See Atha*, 616 F. App'x at 935 (upholding an ALJ's finding that 23,800 jobs nationwide established the existence of work in significant numbers); *Brooks*, 133 F. App'x at 671 ("The ALJ's finding that 840 polisher, document preparer, and bonder jobs constituted a significant number in the national economy is supported by substantial evidence. It is the ALJ, relying on the VE's testimony, who determines whether 840 jobs constituted a significant number; the VE's determination is not binding."); *Allen*, 816 F.2d at 602 (upholding an ALJ's finding that 80,000 jobs nationwide established the existence of work in significant numbers).

In short, as long as the ALJ's findings are based on correct legal standards and are supported by substantial evidence,[12] the Commissioner's

---

[12] The ALJ's finding as to the existence of a sufficient number of jobs is a finding of fact reviewed under the substantial evidence standard, and the Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Allen*, 816 F.2d at 602.

decision must be affirmed even if the reviewer would have reached a different conclusion.[13]  *See Olney v. Comm'r of Soc. Sec.*, Case No.: 2:17-cv-349-FtM-29CM, 2018 WL 4760799, *14 (M.D. Fla. July 30, 2018) (stating that "although the job number data presented by Plaintiff could support an alternative finding, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one") (report and recommendation adopted by 2018 WL 4357134 (M.D. Fla. Sept. 13, 2018)); *Davis*, 2018 WL 2208432, at *7 (upholding the ALJ's decision and stating, in relevant part, that "even assuming that the data from Job Browser Pro constitutes substantial evidence, the data would only support an alternative finding regarding the number of jobs available for plaintiff in the economy").  The Court concludes that substantial evidence supports the ALJ's reliance on the VE's testimony to conclude that there was a significant number of jobs existing in the national economy that Plaintiff could have performed from November 1, 2012 through March 24, 2017.

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **AFFIRMED**.

---

[13] To the extent Plaintiff asks the Court to adopt a categorical rule about VE testimony, the Court declines to do so.  *See Biestek*, 139 S. Ct. at 1157 (rejecting the claimant's request "for a categorical rule, applying to every case in which a vocational expert refuses a request for underlying data," and stating that "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case").

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

 **DONE AND ORDERED** at Jacksonville, Florida, on February 8, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record